**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 15 2007 ★

BROOKLYN OFFICE

**CV 07 2438**

**AMON, J.          LEVY, M.J.**

UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MALCOLM HAYES
*Plaintiff*

Civil Action, File Number:

v.

**JURY TRIAL DEMANDED**

CABLEVISION SYSTEMS NEW YORK CITY
CORPORATION FOR BROOKLYN
*Defendant*

## VERIFIED COMPLAINT

COMES NOW, the Plaintiff, by and through their attorney, Sanford Kutner, and for a Complaint against the Defendant, states and alleges as follows:

*NATURE OF CLAIM*

1. This action is for declaratory and injunctive relief and for damages to redress the deprivation of rights secured to the plaintiff by 42 U.S.C. §1981 and the Fourteenth Amendment.

*JURISDICTION*

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343 (4), conferring original jurisdiction upon this court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights under the Declaratory Judgment Statute, 22 U.S.C. §2201.

1

*PARTIES*

3. Plaintiff, Malcolm Hayes, is a male, African-American citizen of the United States and over the age of 18 years.

4. Defendant, CABLEVISION SYSTEMS NEW YORK CORPORATION FOR BROOKLYN ("CABLEVISION") is an entity engaged in providing cable service in Brooklyn, New York.

*STATEMENT OF CLAIM*

5. Malcolm Hayes, plaintiff, began his employment with CABLEVISION on October 16, 1995.

6. The plaintiff was working as a supervisor for CABLEVISION on March 30, 2007.

7. On March 30, 2007, plaintiff attended a biweekly management meeting, with the majority of his fellow supervisors present.

8. While Chris Connor ("Connor"), plaintiff's manager, a Caucasian employee of the defendant, was conducting the meeting, suddenly and without notice, ordered the plaintiff to stand in the corner.

9. The plaintiff questioned Connor about his order to have plaintiff stand in the corner.

10. Connor responded that he was serious and again ordered plaintiff to stand in the corner while his fellow supervisors watched in amazement.

11. Malcolm Hayes, plaintiff, acceded to Connor's demand.

12. Connor confronted plaintiff and started to pull plaintiff's right pant leg up.

13. Plaintiff tried to stop Connor.

14. The more plaintiff tried to stop Connor, the more persistent Connor became.

15. Connor then made a comment that plaintiff's boots were untied.

16. Connor indicated that if plaintiff had his boots tied then maybe the techs would not walk around here looking like "thugs."

17. On April 2, 2007, plaintiff reported Connor's' actions, which included assault, battery, slander, and racial discrimination, to Bill Entenmann, the Director for Human Resources.

18. On Friday April 13, Bill Entenmann spoke to plaintiff again regarding the Chris Connor incident. He said upon his investigation it is very clear that Connor embarrassed and assaulted you.

19. Plaintiff requested to Entenmann, Director of Human Resources, that he not be required to report to Connor, which request was denied.

20. Malcolm Hayes was subsequently terminated by the defendant, on April 30, 2007, about four weeks after the incident.

21. Plaintiff was subjected to an assault and battery by an employee, Chris Connor, of the defendant.

22. Malcolm Hayes, Plaintiff was subjected to discrimination because of plaintiff was of color.

23. The actions of Chris Connor, employee of the defendant, was equivalent to Connor being the "Master" and plaintiff being a "slave," especially taking into consideration that there were three demands by Connor to humiliate, disgrace, debase, and shame Malcolm Hayes and require plaintiff to stand in the corner, no different than what happened on Southern plantations before the Civil War.

24. A slave had no choice other than obey his master no matter how insulting and offensive the demand of his master, which was equivalent to the demand of Chris Connor.

25. Slaves were often assaulted and battered by their masters, no different than the assault and battery inflicted on Malcolm Hayes by Chris Connor

26. The reference to the plaintiff being a thug by Chris Connor was a deferential term directly aimed at and referencing African-American culture.

27. Plaintiff's status as an employee of the defendant created the contractual relationship.

28. As a direct result of Defendants' actions, Plaintiffs suffered and continues to suffer severe and lasting embarrassment, humiliation, stress, anxiety, and other incidental and consequential damages and expenses.

29. The conduct of the Defendants were outrageous, were done in a deliberate, callous, malicious, fraudulent and oppressive manner intended to injure Plaintiff, were with an improper and evil motive amounting to malice and spite, and were done in conscious disregard of Plaintiff's rights. Therefore, the Plaintiff is entitled to an award of punitive damages from the Defendants.

WHEREFORE, plaintiff prays that the Court:

(a) Issue a permanent injunction enjoining the defendants from continuing or maintaining the policy, practice and custom of denying, abridging, withholding, or conditioning the rights of customers on the basis of color, which rights are secured by 42 U.S.C. §1981.

(b) Award plaintiffs a judgment against defendants in whatever amount.

(c) Grant plaintiffs such other and further relief, including legal fees, as may be necessary and proper.

I, Malcolm Hayes, declare under penalty of perjury, that the foregoing is true and correct.

*Malcolm Hayes*

Malcolm Hayes

Respectfully submitted,
June 13, 2007

*Sanford A. Kutner*

Sanford Kutner, (SK6525)
Attorney for the Plaintiff
6 Tara Place Metairie, LA 70002
718-246-0433
FAX 866-613-6209
E-Mail: civilrightslaw@aol.com